May it please the court, I realize that I'm completely on my own but I am aspiring to reserve four minutes for rebuttal and will try to do so. I'll do the first, Mr. Waxman, if you wouldn't mind introducing yourself for the record. I'm Seth Waxman. I'm counsel of record for POM Wonderful, the plaintiff appellate in this case. Very well. May it please the court, when Congress enacts complementary statutes that may sometime overlap, neither precludes the other unless Congress expressly says so or the two, quote, irreconcilably conflict. Neither is the case here. No one contends that either in the Lanham Act or the Free Drug and Cosmetic Act, Congress indicated in any way and certainly not expressly that the other, that that statute preceded in precedence of and in contradiction of the other. And they certainly do not irreconcilably conflict because, for example, among other things, both statutes preclude, render unlawful, labels that are false or misleading in any material respect. Now, Cope's contrary argument in this case, starting from the very first sentence of their brief, turns on the doubly flawed contention that the FDA has, quote, approved the labeling on its product. The FDA has never seen the labeling on this product, and the fact that the name that Cope chose to put on the product doesn't violate arguendo. The FDA's particular juice-naming regulation is not a safe harbor for the entire label, as the FDA's own enforcement precedent shows. In any event, the FDA has no authority to interpret, much less enforce, the Lanham Act. What about the photomedics case out of our court? Have you had a chance to consider that in this context? Obviously, your argument is that you need to harmonize two sets of statutes. But what does photomedics tell us? I have had a chance to consider it at some length, both when I wrote our original brief and on our reply brief, which addresses it. But in essence, photomedics is one example of many in which courts in this circuit and elsewhere have underscored that because the FDCA can be enforced only by the FDA through regulatory action and not by private parties, a private party in a Lanham Act case, or for that matter a state general statute like we have here, cannot predicate its claim on an unresolved interpretation of the application of the FDA's own regulations. In that case, what was at issue was a claim that by one medical device manufacturer against another that the labeling was false and misleading because it indicated that the accused device had been approved by the FDA. The answer to the question of whether it had or hadn't been approved under Section 510K of Title 21 of the Medical Device Amendments Act turned on whether under the Medical Device Amendments Act that device was, I believe it's substantially identical or not materially different from the brand name device that had been approved for use. And that required a technical judgment by the FDA as to the substantial equivalence of the two devices that by law is exclusively given to the FDA as an expert agency, and it had not made that determination. So what this court said, as other courts have, is you can't use another, because the FDCA can be enforced only by the FDA, you can't use an independent basis for a cause of action like the Lanham Act or state tort law to prejudge a discretionary decision or an expert determination that the FDA has to make. And you can't, because you can't use those other causes of action to enforce the terms of the FDCA. Now, here what we have, I'll address first the Lanham Act preclusion issue. We have a situation in which we have two statutes that are aimed at two different goals, which do overlap to some extent in the context of food and drug labeling, that serve two different purposes, and the cause of action in this case doesn't depend in any way on demonstrating that they have violated any provision of the FDCA or any particular regulation of the FDA. Why doesn't it? It seems to me that if, in fact, a particular defendant had done all that was necessary to, if you will, provide the appropriate labeling, the appropriate naming that would comply with the FDA's interpretation of the FDCA, that at the point where you're going to allow the Lanham Act to sue about a label that complies with the FDA or the FDCA, the FDA's interpretation of it, that to allow it to suit on that particular claim seems almost like you've met the standard. How do you get another action against the standard if you've met the standard? Well, Judge Smith, a couple of points. First of all, the FDA has not concluded that this label. Well, but the trouble is the FDA is the only one who can conclude. If they don't want to do it, then the FDCA's got to make an action themselves. No private action can be brought by you to make the Coca-Cola comply with the FDCA. I quite agree with that. Their contention is that because the name that they have chosen for this juice appears to be among the range of names that a specific regulation implementing 343I permits, and because the font sizes of the name on the label appear, to comply with a particular regulation addressing font size, that thereby the label complies with the FDCA. But the FDCA includes a separate provision, the very first provision under 343, which broadly says that a product is misbranded if it is false or misleading in any regard. And the FDA, in its enforcement actions, and I think on page 7 of our reply brief, we cited the court to an enforcement letter that the FDA sent to Nestle, finding that the labeling of its 100 percent juice orange tangerine and juicy juice, all natural 100 percent juice grape products, is false or misleading under 343A, notwithstanding the fact that the name complied with the naming regulation. It was that the overall display of the label and the product was, in the FDA's words, designed to imply that the product is 100 percent orange and tangerine juice or grape product. In other words, 343A is an independent requirement, a requirement independent of 343I or 343F. And that is what the, to the extent that there is an overlap between the two sections, that is the language also of the Lanham Act. In any event, I guess my problem about this comes from it seems to me that a Lanham Act claim is barred when adjudicating the claim would require me, the court, to interpret the FDCA's potentially ambiguous regulations. That's correct. And that, we're not asking, we're not asking that, the FDCA, with respect, the FDA has no regulation implementing the broad statutory prohibition against false or misleading labeling. And even if it did, Your Honor, the Supreme Court's decision in Wyeth is an a fortiori case on this point. It dealt with preemption, not preclusion. And the test for one statute of Congress precluding enforcement of another is stricter than preemption. And in that case, that case involved FDA approval of the labeling of a drug that was so dangerous it could be prescribed only by physicians in hospitals. It was sold only in hospitals. It was marketed with the requirement that the FDA said, it is unlawful to sell this drug in interstate commerce unless you use the exact words and the exact typeface, including bolding requirements, that we include. And nonetheless, the Supreme Court of the United States, I have to say to my professional chagrin in that particular case, found that that specific federal law requirement under the FDA, or FDCA, did not preempt a general state strict liability and negligence cause of action challenging the sufficiency of the label itself. And so even if you had a situation here where, which has not happened, in which the FDA either has specifically looked at, much less required the use of the label for this product, and had promulgated regulations that said, you know, if you comply, if you give an appropriate name and you use appropriate typeface, under no circumstances will the label be misleading under 343A. Counsel, I know you want to save your time. Oh, yes, thank you. One question with respect to 343F. Yes, Your Honor. Is it your position that there is no conflict with the requirement that the FDA determine words, statements, other information required on labels? If I understand Your Honor's question, we, for purposes of this case, we are not contesting that the name that they have chosen is one among the range of names that 343I contemplates as elucidated by their regulation 102.33. Because the FDA has indeed acted extensively in this area, and as I understand it, has authorized the type of advertising of labeling that Coca-Cola used here. Isn't that true? It has, assuming that the words that they've chosen are accurate, for example, that this juice actually does taste like pomegranate juice, which it doesn't, but this isn't an argument about the merits, then what the FDA has said is with respect to juice blends, if you are using a non-predominant juice to supply the flavor of a blend of juices, even if the non-predominant, you may call it by the name of the non-predominant juice, assuming you indicate that it is a flavoring of blends. But Coke's argument here depends on the assertion that it could intentionally, knowing that consumers would be misled, it could include in its product one one-hundredth of a percent of pomegranate juice and would be immune, it would have a safe harbor from any cause of action by a competitor claiming that it was misleading and luring competitors away. And in fact, we aren't all that far from this case. In the standard 59-ounce bottle of this product, artificially colored to look exactly like pomegranate juice, the amount of pomegranate juice in it is less than one-fifth of one ounce. Counsel, you're down to about a minute. You may wish to reserve. We'll hear from opposing counsel. Thank you, Your Honor. May it please the Court, Stephen Zaleson for Appali, the Coca-Cola Company. The district court in this case properly held that it is not false advertising for a company such as Coca-Cola to label its product precisely as it was instructed to do so by the U.S. Food and Drug Administration in extensive labeling regulations that were handed down nearly 20 years ago. May I just sort of interrupt here and say, it is true, is it not, the FDA never approved this particular label? Yes. Like the, I'm sorry, go ahead, Your Honor. And to add, isn't it possible that compliance with FDA regulations is necessary but not sufficient to establish that the label is not misleading? Thank you, Your Honor. It is true that with respect to all juices, not just this particular juice, that FDA does not engage in a product-by-product review. It's not like you submit a new drug application and the FDA reviews the safety and efficacy data. Instead, there are uniform rules and standards published by FDA, exactly the same situation this Court confronted in the Pharmamedics case that was discussed with Mr. Waxman. FDA has a set of rules as to when you may or may not market a medical device as being substantially similar to something that's already on the market. Is this essentially occupation of the field? Is that your argument? This is, with respect to preemption, preemption of state law, this is express preemption, which is quite different from the situation Mr. Waxman was just discussing in the Wyeth case, where the Supreme Court held that there was no preemption of a state law claim based upon a potentially inadequate drug label. In the Wyeth case, there was no preemption clause whatsoever. Here we have, with respect to state law, an express and very broad preemption claims that tells states and local governments to get out of the business of regulating food labels. Congress, in the National Labeling and Education Act of 1990, very clearly articulated a policy that it wanted uniform standards in this area, both to help consumers understand exactly what words on food and beverage labels mean, and to allow manufacturers to escape from the risk of having to confront potentially 50 different regulatory schemes in 50 different states. That was a very careful policy decision made by Congress, and it vested in FDA exclusive authority to establish uniform nationwide standards for food and beverage labels, including for fruit juice blends, which is precisely what FDA has done here. And what it did is it laid out extremely detailed regulations about, if you have a blend of juices that the predominant juice is in the name, but it is not predominant by volume, you call it a flavor. Is this 21 CFR 102.33? Exactly. B through D. That's precisely right. And so 102, 21 CFR 101.22C, excuse me, 102.33C, talks about what you do when you have a multi-juice blend, where you have a represented juice, as is the case here, pomegranate and blueberry, but they are not the predominant juices, you call it a blend, which Coca-Cola has done. And 102.33D1 tells manufacturers what to do when you have a multi-juice blend, and you're calling out a juice that is the flavor of the overall blend, but isn't the predominant juice by volume, and there you use the word flavor. And FDA decided, and this is not just true. But the FDA did not rule specifically with respect to this product. No, with respect, again, there is no scheme in place by which the FDA reviews product by product juice labels. What it has done is it has set forth uniform standards and told the industry that if you follow these standards, we will not consider your product to be misbranded. We will not consider your label to be misleading. And that's in the, what I would say in effect is the legislative history of this set of rules. It's spelled out in the Federal Register. These rules were the result of a multi-year process of notice and comment, where many stakeholders, industry, government, consumer groups, et cetera, had an opportunity to present their views to FDA. But it seems to me that if the FDA does not ever say what you've done is correct, you're just following regulations that you believe to be regulations saying how you can name your particular product. There's pretty good law that the Lanham Act may be used to advance false advertising claims that do not seek redress for FDCA violations. I agree with that, Judge Smith. Do not require a court to interpret those regulations. It seems to me that's exactly what we've got going here. We've got you coming out with your product, and you're naming it according to what you suggest these regulations are. And all we've got is the, if you will, PUM Wonderful suggesting, hey, whatever you're naming it, it's false advertising. We don't care what the FDCA hasn't approved it. You seem to get it there. But whatever you've done, it's false advertising. It doesn't do what it ought to do. Sure. The problem with that, and I agree with you that there is law, which we don't contest, that if the Lanham Act claim would not require interpretation of ambiguous or attempt by a plaintiff, private plaintiff, to enforce ambiguous FDA regulations, then the Lanham Act claim can proceed. And I think this court held that in photomedics. I think that's what photomedics is. Sure. So, for example, let's stay with that. For example, there's a line of cases that talks about 100% juice. FDA says if you have 100% juice, you're allowed to call it that. And that's not ambiguous. Everybody knows what 100% means. And so if a company is selling a juice product, calling it 100% juice, and it's less than 100% juice, it simply doesn't matter that there are FDA regs on point. It's still false advertising. Correct. Okay. Now, let's suppose the FDA had a regulation that said you can call your product 100% juice as long as it's at least 99.5% juice, which it does, actually, in many other contexts, which courts have dealt with. Zero calorie doesn't mean no calorie. It means less than five calories per serving. That's the FDA rule. Zero trans fat doesn't mean zero trans fat. It means less than half a gram of trans fat per serving. So now let's say that the FDA had a rule that said 99.5 and above, you can call it 100%, and a company has a 99.9 or a 99.8, labels its product 100% juice. Okay. If you allow a Lanham Act claim or a state law claim under 343A, what you have just done is you have eviscerated all of the specific regulations that FDA has put out. You have done exactly what this court said would be improper in photomedics, which is to allow a private cause of action to usurp FDA's exclusive authority to decide what types of claims are appropriate and which ones are not. And that's what's going on in this case. 343A is a catch-all provision. As Mr. Waxman said, there are no regulations interpreting it, but the regulations for juices are designed expressly to separate out labels that FDA considers to be misleading and labels that FDA considers to be not misleading. FDA has told the world how it should label, how the industry should label juice products to avoid being misleading. I'm the ordinary mother, and my doctor says to me, it would be great for your children to drink a lot of pomegranate juice. So I see your label, not knowing that less than one-fifth of one percent is pomegranate juice, the rest is apple juice. Okay. You say that's permissible. It is absolutely permissible if you called it, if we called it pomegranate blueberry juice and didn't have the rest of the words pomegranate, blueberry, flavored blended juice. Call it pomegranate apple juice. Okay, same thing, pomegranate apple juice. If you didn't have the words flavored blend of five juices or however many juices there were, then you would run afoul of the FDA regulations. You would have a problem. Your product would be misbranded. But the FDA has decided, and this is, you know, Mr. Waxman and Palm Wonderful can disagree with this. They can go to FDA. They can tell those folks in Washington that they got it wrong. They should look at it and change it. But the FDA has decided that consumers know what the word flavored means. Mr. Waxman says, hey, you can have one hundredth of one percent pomegranate juice. That's absolutely right. Actually, you can have no pomegranate juice and still be called flavored as long as you label it correctly. Cherry flavored cough medicine doesn't have any cherry in it. The FDA believes and has issued regulations that say that consumers know that flavor is code for It tastes like that fruit or whatever the food is, but it doesn't necessarily have very much, if any, of that food in the product. That's simply what the word flavored means. I have a few minutes left. I'd like to turn to the state law issues. As I said, the issue we're dealing here with under state law isn't full occupation of a field, although one could certainly make that argument. We're dealing with an express preemption statute that is extremely broad on its face. 343.1 says that no state may directly or indirectly establish under any authority any requirement for the labeling of a food of the type required by, and then there's a list of which 343F and 343I are included. And it can't do that if the requirement is not identical to the requirements set forth by the FDA. Now, Mr. Waxman's response is, well, I can forget about 343I and F because I'm only proceeding under 343A. And that precise argument has been rejected time and again by courts in this circuit, the Red v. Kroger case, the Gorenstein case, and several others, and it's because it leads to the kind of absurd result that I was describing earlier. A plaintiff could always, always say that they're proceeding under the catch-all provision of 343A and therefore not attempting to impose any additional or different requirements than is expressly required by the statute. But when there are regs directly on point and the FDA purposefully set out to occupy that field and tell manufacturers how to label their products, those types of regulations under state law are expressly preempted. When I read Williams v. Gerber Products Company, our 2008 decision, it seems to me that this language is pretty important. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misconceptions and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representatives on the packaging. So if I take that language, then it doesn't seem to me that PUM is really contesting or attempting to enforce what the FDA or FDCA is doing, but really is going a different way in what they're doing. Doing the same thing, Williams v. Gerber Products allows them to go. I think, Judge Smith, that Williams dealt with a different situation where the defendant was relying on the ingredient list on the back of the label to correct an alleged misrepresentation that was occurring either on the front of the product or in other advertising or promotion. It was FDA regulation that it complied with. Yes, it complied with those, but that was not a case like this one where the FDA had said, here is how to name your product. Here's what you should put on the front of the label. If it's a flavored blend of juices, use the word flavor or something like that, and consumers will understand. There's nothing like that in the Williams case. I would say that this case is much more like this Court's decision last year in Daigleman, which is not a food or beverage case, but is a case involving disinfectant claims for contact lenses where the FDA had set forth in guidance documents standards for when you can and cannot make a disinfectancy claim. The defendant's product had complied. Again, no press finding by FDA. It was never reviewed by the agency, but the defendant showed that its product was consistent with the FDA-announced standards for guidance, and the plaintiff in that case was held to be precluded, excuse me, preempted from using state false advertising law to try to establish a different disinfectancy standard than that which the FDA had promulgated. This is, I would say, precisely the same type of situation here. I see that my time is up. Your time has expired. Thank you. General Waxman, you have some reserved time. Thank you. Our case does not, we're not claiming that the product is false or, the labeling is false or misleading under the Lanham Act only because the name is improper. There are any number of other ways that Coca-Cola could alter the display of the labeling and retain the name without, and reduce the overwhelmingly confusing nature of this. I mean, even if you read, and we have, the excerpts of record includes both the front and the back label. Judge Nelson, no consumer could look at this under a microscope and ascertain how much, or more to the point, how little pomegranate juice there is in this. There is no way to know. We obtained it in this case by an admission from Coca-Cola. And that's the, there are any number of ways you could retain this pomegranate, blueberry flavored blend of five juices and reduce the overwhelming confusion to consumers which competitively harms POM in this case. And that's why their reading, saying, well, so long as we complied with the naming regulation, the FDA has concluded that it's not misleading, is wrong. Number one, that would read subsection A right out of the statute. Number two, it is completely inconsistent with the way the FDA enforces 343A, and I misspoke, the Nestle decision is cited on page 11, not page 7 of our case. But that was a case in which the FDA, there was no argument that the name that Nestle put on its two juices complied with the specific naming regulation. But nonetheless, the FDA took enforcement action because as a whole, the labeling, including the proximity on the label to the name of other words and other images, misled consumers into believing that it was, in fact, 100% either grape or 100% orange and tangerine juice. Oh, quick question, sorry. Would you distinguish Dagelman for me? Have you looked at it? I looked at it, and it's the subject of our response to the interminable list of 28J letters that came in. I can't bring it to mind exactly. I don't believe it had anything to do with the Lanham Act. The reason it's of some import is I'm in the middle. So when he cites that case, he hits me right here. So I wanted your response. Actually, he lays it out pretty well. Well, as to the specific response, I'll rely on our response to their 28J letter. But as to the general proposition that there is preemption in this case, there is no preemption of the state law causes of action in this case for two reasons. Number one, in order for there to be preemption under 343I, the state cause of action must impose a non-identical requirement, quote, of the type listed in one of the enumerated subsections of 343. Our cause of action under the state Sherman law is of the type, in fact it is identical, to the FDA, FDCA's prescription in 343A, which is expressly excluded from the preemption provision. And in any event, and quite separate and apart from this, and I think this does go to the Diegelman point, the California Supreme Court has interpreted the Sherman law, which poses the substantive standard that's implemented both in the UCL and the FAL, as being identical to the provisions of the FDCA and the regulations of the FDA. And therefore, it is not preempted even insofar as it implicates 343I or 343F, because it's identical. Now, that may make it hard for us to win on the merits if we were relying only on the name, but it is not preempted. Thank you, counsel. Our questions took you way over time. The court would like to express its appreciation to counsel on both sides for a very, very helpful argument in this very challenging case. The court will now adjourn. All rise. Thank you very much. Great arguments. Thank you. This court is adjourned.
judges: Nelson, O'scannlain, Smith